HAMMOND THEATRICAL COMPANY *v.* GREGORY ET AL.

[No. 25,741.   Filed March 13, 1935.]

*William J. Whinery,* for appellant.

*Frederick Crumpacker, Edwin H. Friedrick* and *Jay E. Darlington,* for appellees.

TREMAIN, J.—On August 20, 1928, appellant filed its complaint in the Lake Superior Court against the appellee, Gregory, as principal defendant, wherein he demanded judgment for $100,000.00 for money had and received, and against Hammond National Bank and Trust Company as garnishee, and filed an affidavit in attachment and garnishments, and bond. Writs of attachment and garnishment were issued to the sheriff of Lake county commanding him to seize the property of said Gregory to satisfy appellant's claim.

The affidavit for a writ of garnishment was verified by William Kleihege, president of appellant, and alleged that he had good reason to believe that appellee, Hammond National Bank and Trust Company, had "in its possession, and under its control, certain property of defendant, Gregory," which was subject to execution, four certain Goldman notes, each in the principal sum of $5,313.60.

On February 9, 1929, appellees filed their verified motion in four paragraphs to quash and dismiss the garnishment proceedings. The first paragraph alleged that there was a defect in said garnishment proceeding, apparent upon the face of the record, in this: That the affidavit "wholly fails to allege that said garnishee defendant is indebted to the defendant Gregory in any sum, or has in its possession or under its control or agency any property, moneys, credits or effects such as are subject to garnishment. The only property described in said affidavit is 'four certain Goldman notes each in the principal sum of five thousand, three hundred thirteen and 60/100 ($5,313.60) dollars.'"

The second paragraph of the motion to quash, in addition to the facts alleged in the first paragraph, alleged "that said notes were deposited with the Hammond Trust and Savings Bank, the corporate predecessor of this garnishee defendant, as trustee under a certain escrow agreement," a copy of which was attached. "That on the date when said agreement was executed a certain cause of action was then pending in the Lake Superior Court, Room One, as Cause No. 26,-823 between S. J. Gregory Theatrical Company, as plaintiff, and this defendant Sclavones J. Gregory, as defendant. That said S. J. Gregory Theatrical Company is identical with the present plaintiff, Hammond Theatrical Company, said corporation having changed its name since said date. . . . That on said date said Gregory was the owner and in possession of said notes." That pursuant to said agreement he deposited said notes in escrow with said bank; that said notes were to be held by said bank during the course of the litigation, and to be available for the payment of any judgment that might be rendered against him therein, and said bank so accepted and held said notes. That said cause

of action was venued to the Porter Circuit Court, issues were closed, and the cause was set for trial August 20, 1928. That the parties appeared and were ready for trial when the plaintiff therein dismissed the same at its own cost and "then and there stipulated of record with said defendant that said notes should be released from said escrow agreement, and should be delivered by said bank to the defendant." That on the same day, and before Gregory could repossess said notes, this action was filed and garnishment summons was served. That said escrow agreement was executed November 2, 1925, and provided that "first party (appellant herein) agrees that it will not hereafter bring any new or additional action by way of attachment or for the appointment of a receiver or otherwise to enforce against the second party the claims asserted in said actions now pending in the Lake Superior Court, or any other claims or causes of action arising out of the business or affairs of the S. J. Gregory Theatrical Company." That at the time said escrow agreement was executed, other property of Gregory was attached, and was released by said agreement. The four notes constitute the only property attached in this action.

The third paragraph of the motion to quash, in addition to averring many of the facts contained in the first two paragraphs, alleged that the plaintiff (appellant herein) had waived and released whatever right it might have had to subject said notes to garnishment; that by reason of said waiver and release said notes were exempt from this garnishment process; that the action pending in October, 1925, between said parties prayed for an accounting and judgment for $100,000.00; that in said action a receiver was appointed for said defendant without notice to him, and pending said action said escrow agreement was executed; that at

said time, said Gregory was a resident of the state of Illinois and was the owner of said four notes, all in his possession in that state; that pursuant to said agreement he brought said notes to Lake county and placed them in escrow, which he would not have done except for said agreement; that at the time the instant action was filed said notes had been in escrow for almost three years and were of a market value of approximately $25,000.00, and were due and payable, and collectable, at the time the appellant dismissed said original action and caused the garnishment summons to be issued herein; that the appellant violated both the letter and the spirit thereof by commencing this action; that this action arose out of the same transactions and the same facts and claims upon which said previous action was based.

The fourth paragraph recited the same facts that were contained in the former paragraphs and in addition alleged that the plaintiff (appellant) had procured the issuance and service of said garnishee summons under circumstances which constituted an abuse of the process of the court, and to prevent said Gregory from collecting said notes. Said escrow agreement was made an exhibit to this paragraph. It was further alleged that William Kleihege was the principal owner of the stock in said appellant corporation and was indebted in a large sum to numerous persons; that it dismissed said original action, as aforesaid, knowing that if he went to trial he would probably be unsuccessful and would be found indebted to said Gregory; that at that time said Kleihege had been convicted and sentenced to prison for instigating a conspiracy which resulted in the dynamiting and the destruction of the State Theatre in Hammond, and as a result thereof, an action was pending against him demanding damages in the sum

of $750,000.00; that because of his financial embarrassment he was vitally interested in hindering and delaying said Gregory from presenting said notes for payment, which payment was due primarily from said Kleihege; that by the garnishment proceedings herein said Kleihege had as his purpose the delay of the payment of said notes and used the process of the court therein, wrongfully and for the purpose of abusing the same. It was further alleged that Gregory did not owe the appellant; that he was solvent, and, by reason of said escrow agreement, had been deprived of the use and proceeds of said notes in his business. Copies of the notes, collateral agreements and escrow agreement are made exhibits of the said motion to quash, all of which constituted many pages in the record.

On the same day, February 9, 1929, when appellees filed the motion to quash, the appellant filed its verified application for the appointment of a receiver to take possession of the property of said Gregory, which property consisted of said notes, and in said application also asked the court to issue a temporary injunction restraining Gregory from taking possession of said notes and removing them from the jurisdiction of the court.

The appellee Gregory answered the appellant's application for a receiver and temporary injunction on the 16th day of February, 1929, which answer is voluminous and contains most of the allegations embraced in his motion to quash the writ of garnishment. It alleged that said notes, pursuant to the escrow agreement, had been in the custody of the court since November, 1925; that said proceedings had been filed by the appellant for the purpose of keeping said notes under the control of the court for a longer period of time than could be accomplished by said garnishment process, and for the

purpose of avoiding payment thereof, and that it was filed in violation of said agreement; that the action was being prosecuted by the appellant in bad faith and in an attempt to abuse the process of the court.

Affidavits and counter-affidavits were filed by the parties.

The cause was submitted to the court for trial without the intervention of a jury demanded by appellant on February 16, 1929. In addition to the introduction in evidence of the many affidavits, the court heard oral evidence solely for the purpose of determining whether or not its process was being abused. The hearing was continued from day to day and on the 23rd day of February, 1929, the appellee, Gregory, filed his motion to quash and dismiss an additional writ of garnishment which the appellant had caused to be issued against the appellee, First Trust and Savings Bank of Hammond, individually and as a trustee. The hearing was concluded, and on March 29, 1929, the court entered an interlocutory order and judgment sustaining each of the motions to quash, dissolve, and vacate the garnishment proceedings and denied the appellant's application for receiver and for a temporary injunction and rendered judgment against the appellant.

Appellant's motion for a new trial was overruled and he duly prayed and perfected an appeal to this court. The errors relied upon for reversal are five in number. The first two are based upon the alleged error of the court in sustaining the motion "to quash, dismiss, dissolve and vacate the garnishment proceedings." These assignments are presented together by appellant in its brief. The 3rd, 4th, and 5th assignments predicate error upon the court's refusal to appoint a receiver and to issue a temporary injunction.

The appellee, in his motion to quash the writ of

garnishment, controverted the facts alleged in the garnishment affidavit, and relied largely upon the escrow agreement executed by appellant and appellee, Gregory, in November, 1925, at a time when there was an action pending between them, wherein appellant sought judgment against appellees upon the same cause of action and matters herein involved. At that time appellant had caused the appointment of a receiver who had qualified and taken possession of appellee's property. It was agreed that the receiver should be discharged in consideration of which appellee should place in escrow in the Hammond Trust and Savings Bank the four notes, now attached, which notes at that time were held by the appellee in the state of Illinois. The notes were to be held in escrow by said bank as security for any judgment recovered by the appellant against the appellee in the main actions then pending. This part of the agreement was fully executed. That is, the notes were placed in escrow; the receivership was dissolved and the costs paid by appellant; the appellee's other property was released from any and all claims by way of liens or otherwise, all of which was ordered and approved by the court.

As a further consideration of the agreement, the appellant agreed that it would make and assert no claim against the appellee's real estate; that it accepted the deposit of said notes as full collateral security for its claims in lieu of property then held by the receiver; that it would not "hereafter bring any new or additional action by way of attachment or for the appointment of a receiver or otherwise to enforce against the second party (Gregory) the claims asserted in said actions now pending in the Lake Superior Court, or any other claims or causes of action arising out of the business or affairs of the S. J. Gregory Theatrical Company."

The appellant asserts that the court erred in sustaining the motion to quash the writ of attachment and relies upon *Cooper* v. *Reeves* (1859), 13 Ind. 53; *Ludwick* v. *Beckameyer* (1860), 15 Ind. 198, and *Foster* v. *Dryfuss* (1861), 16 Ind. 158. These cases are easily distinguished from the facts involved in the instant case. *Cooper* v. *Reeves, supra,* involves an attachment proceeding based upon a fraudulent transfer by the defendant of certain real estate. The motion to discharge the attachment was based upon the single ground of defects apparent upon the face of the pleadings which the court held did not appear. The Ludwick case arose in the court of a justice of the peace and the question involved on appeal was that of jurisdiction, not appearing upon the face of the pleadings, which matter the court held should be raised by plea in abatement. *Foster* v. *Dryfuss, supra,* relied upon was a case wherein the defendant appeared and pleaded to the main issue without controverting the facts alleged in the affidavit and attachment. The main action and the attachment proceedings were tried together and no motion was made to dismiss the attachment proceedings until after the verdict was returned by the jury, which the court held was too late. The question of the abuse of process was not involved in either case.

It does not appear that the precise question, here presented, has been passed upon by courts of last resort in this state. The appellant takes the position that a garnishment proceeding or process can be quashed only by reason of defects apparent upon the face of the proceeding, while the appellees contend that the court is not confined to a consideration of the matters apparent upon the face of the proceeding when it is considering a motion to quash the proceeding or process on account of abuse thereof; that the court may quash a garnish-

ment proceeding or writ on the ground that the plaintiff was abusing its process regardless of the source of its information; that courts have inherent power to do this to protect the dignity of their process and to protect litigants against its abuse; that this may be done by the court whenever its attention is called to the matter; and, that the court possesses the inherent power to inquire summarily into such matters. In making such inquiry the appellees further contend that the court has the power to ascertain the truth of the facts involved and in doing so may hear evidence *dehors* the record.

This question is fully discussed in 28 C. J. 353, Secs. 558 and 559 as follows:

"In cases where it is sought, not to have the garnishment discharged as a matter of statutory right by the giving of security, but rather to invoke the jurisdiction of the court to quash the writ, dissolve or vacate the proceedings, or discharge or release the garnishee, on a showing of proper grounds therefor, a motion is the remedy generally resorted to. In some jurisdictions, objection to the proceedings may be interposed by affidavit of illegality, while in others a proper remedy is a petition for rule to show cause why the writ should not be quashed. A motion to quash a garnishment, the proceedings thereon, and the trial and determination thereof, are summary in character. It is distinguishable from a plea involving matters in pais in that it is addressed to and triable by the court while the plea is an appeal to, and triable by, the jury.  *  *  *

"The motion to quash a garnishment is triable by the court without the intervention of a jury, even though matters dehors the record are involved. The whole authority of the court, as distinguished from that of the jury, to try the questions arising on a motion to dissolve the garnishment arises from the manner of their presentation, the presentation being in the form of a motion. At least

where an abuse or misuse of its process is concerned, the court has inherent power to inquire summarily into the matter and to dissolve the writ of garnishment."

The case of *Rustad* v. *Bishop* (1900), 81 Am. S. R. 282, is cited among the cases supporting the text. This is a Minnesota case wherein the plaintiff had caused the wages of the defendant to be attached by writs of garnishment on five different occasions, thereby causing the defendant's wages to be impounded until the amount exceeded his exemption. The Supreme Court of that state, in passing upon the question of the abuse of legal process, stated:

"There was outrageous abuse of legal process in every one of these garnishments after the first. . . ."

In *Bradley Metcalf & Co.* v. *Armstrong* (1896), 9 S. D. 267, 269, 68 N. W. 733, the court held:

" '. . . The power and duty of the court to inquire into abuse and misuse of its process rest upon ancient and established principles, which are as applicable to writs of attachment as to any other process.' "

In *Hockaday* v. *King* (1912), 31 Okla. 127, 120 Pac. 565, the court considered the question of the quashal of a garnishment upon the ground that the affidavit upon which it was based was false and upon the claim that the plaintiff was abusing the court's process. In passing upon the question the court held (p. 128):

"Plaintiff filed in opposition to the motion objections to the dissolution of the garnishment, after which affidavits were filed in support of and in opposition of the motion to dissolve, and a considerable amount of testimony was taken by the court at the hearing of said motion. Upon the affidavits filed, and the testimony, the court found in favor of defendants, and dissolved and vacated the garnishment. It is to reverse this order dissolving

and vacating the garnishment that this proceeding in error is prosecuted. . . ."

"We think that the court has inherent power at all times to remedy the improvident issuance of its process and to protect against abuses thereof. Courts will not permit their process to be employed for improper and unauthorized purposes; and where a court's attention is called by a motion to facts showing that the authority of the court to issue garnishment summons has been abused by the procurement thereof upon false statements, it is the duty of the court to render relief by dissolving such garnishment."

The case of *Chanute* v. *Martin* (1860), 25 Ill. 49, 51, approved the same doctrine by the use of the following language:

"The garnishee may undoubtedly show that the judgment upon which execution issued has been paid, released, or otherwise discharged. And yet if the officer's return and affidavit were conclusive of that fact, no such defense could be made. And it is for the plain and simple reason that the court has the right to see that its process is not abused, and employed for the purpose of perpetrating wrong or oppression. This whole proceeding is in the nature of process to obtain satisfaction of a judgment. And the court may, and it is its duty, at any stage, upon its appearing that the garnishee process was improvidently issued, to dismiss the proceeding. Courts will not permit their process to be employed for improper and unauthorized purposes."

To the same effect is *Wanzer* v. *Bright* (1869), 52 Ill. 35, 40:

"It is a firmly established rule of practice that courts will never permit the fraudulent use of their process. And when it is attempted, the court will promptly interfere to prevent its process from being made the instrument for effectuating the fraud, by setting it aside. It can never be tolerated that such process shall be debased to the purpose of fraud and oppression. The pure fountains of justice can never be so polluted. The courts were

created for the administration of justice, and they and their process can never be used for the purpose of oppression and to perpetrate fraud and wrong, or their process fraudulently obtained and employed to enforce a right, however just and legal."

The court, in *Sandburg* v. *Papineau* (1876), 81 Ill. 446, 448, used the following language:

"There is no principle of law better recognized than that which gives to courts of record power over the process of their courts. It is essential to the administration of justice, and it by no means depends upon statutory enactment, but the power is coeval with the common law courts; and such courts will recall their process and quash the same, when it is shown that it would be illegal or inequitable to permit its further use, and to allow it to be enforced."

The latest case to which our attention has been directed involving the question of a quashal of a garnishment writ is the *First National Bank of Palestine* v. *Hahnemann Institutions, etc., et al.,* (1934), 356 Ill. 366, 190 N. E. 707. In this case a judgment had been entered; an appeal had been taken and the first judgment upon which the garnishment proceedings issued had been annulled, except to stand as security pending the determination of the controversy on its merits. A motion to quash the garnishment writ and to discharge the defendant as garnishee was held to be proper and should have been sustained under the facts therein involved.

In the instant case an issue was formed by the motion to quash, as to the court's authority to quash a writ of garnishment and thereby to prevent an abuse of its own writ. The purpose of a quashal of the process is to protect the court primarily, not the party, from the indignity of having its process used for unjust and illegitimate purposes. When the court's attention is directed to such abuse, it may determine the

question summarily, without compromising its dignity by submitting the question to a jury. When the facts do not appear upon the face of the record, it may hear evidence *dehors* the record for the purposes of determining the truth or falsity of the charge.

Under the facts disclosed by the record it is clear that the trial court had ample reasons, based upon sound principles of law, to protect itself and its process from the abuse perpetrated by appellant. The court should not permit a party litigant, not only to ignore a written contract made concerning matters pending in court and intended to settle litigation, but especially should a party not be permitted to violate a promise made in open court, such as was made by appellant when the suit was dismissed in the Porter Circuit Court upon a stipulation that said notes should be returned to Gregory by the bank. The record discloses that at the time the stipulation was made, it was known to appellant and its attorneys that another suit would be filed on the same day and that said notes would be attached before Gregory could secure possession of them. In causing the issuance of the last writ of garnishment the appellant was wrong in at least two matters: (1) It violated the escrow agreement executed nearly three years previously, and (2) it violated its stipulation made in open court.

In the court below the issue was formed by the motion to quash the garnishment process. The court was called upon to and did decide that issue. There was ample evidence to warrant the court's ruling. The law sanctions the procedure. The maxim, "No man shall take advantage of his own wrong," fittingly applies to this case. The trial court did not err in sustaining the motion to quash and dissolve the garnishment proceedings.

What has been said upon the question of the quashal of the writ of garnishment applies with equal force to the appellant's application for a receiver and a temporary injunction. The application amounts to a direct violation of the written contract executed by the parties in November, 1925, wherein they expressly agreed not thereafter to ask for a receiver or to take any other action concerning the matters described therein. The record discloses that the only property held by the appellee, Gregory, in this state consisted of the four notes described in the escrow agreement. The question presented by the application for the appointment of a receiver was one which called for the exercise of the court's sound discretion; the matter was wholly discretionary. The statute providing for the appointment of a receiver is not mandatory but permissive. Sec. 1300, Burns 1926. §3-2601, Burns 1933, §1143 Baldwin's 1934. In *Corbin* v. *Thompson* (1895), 141 Ind. 128, 40 N. E. 533, the court held:

> "The power of the courts to appoint receivers is one of the highest and most unusual character vested in courts of chancery and is never exercised in doubtful or evenly balanced cases; but is exercised only where justice would in all probability be defeated by withholding it."

The appellant is in no position to ask for the appointment of a receiver in the face of his solemn promise, in writing, not to do so. A court of chancery exercising its sound discretion denied the application.

The trial court heard evidence upon the question of the receivership and the granting of the temporary injunction. The evidence was conflicting. The Supreme Court will not weigh the evidence introduced upon such hearing any more than it will weigh evidence in any other case. See *Naylor* v. *Sidener*

46

(1886), 106 Ind. 179, 6 N. E. 345. This court, under the facts, is in no position to disturb the findings of the trial court.

Having found no reversible error in the record, the decision of the lower court is affirmed.