ROONEY *v.* ROONEY

[No. 28,841. Filed December 12, 1952.]

*Jay E. Darlington,* of Hammond, for appellant.

*Harry Long,* of Gary, *Lester A. Ottenheimer,* of East Chicago, and *Engelbert Zimmerman,* of Valparaiso, for appellee.

EMMERT, C. J.—This is an appeal from an interlocutory order which awarded the appellee, hereafter referred to as the wife, (1) the use of the family home of the parties and the income from said family home, (2) ordered appellant, hereafter referred to as the husband, to pay to the clerk's office, for the support of the plaintiff the sum of $150.00 per month, and (3) ordered the husband to pay the wife "for attorneys' fees the sum of $2,000.00 within thirty (30) days."

The evidence on the petition for an interlocutory order was conflicting,[1] but on appeal this court will not weigh the evidence to determine where the preponderance may lie. *Naylor et al.* v. *Sidener* (1886), 106 Ind. 179, 185, 6 N. E. 345; *Mead* v. *Burk* (1901), 156 Ind. 577, 582, 60 N. E. 338; *Chicago, etc. R. Co* v. *Kenney* (1901), 159 Ind. 72, 81, 62 N. E. 26; *Hammond Theatrical Co,* v. *Gregory et al.* (1935), 208 Ind. 31, 45, 194 N. E. 631; *Henderson* v. *Henderson* (1887), 110 Ind. 316, 319, 11 N. E. 432. "The law does not contemplate that the husband shall be oppressed by the allowance, neither does it intend that where his means are ample the court shall weigh the amount awarded in 'the scales of an apothecary.' " *Davis* v. *Davis* (1895), 141 Ind. 367, 374, 40 N. E. 803.

---

[1] "Pending a petition for divorce, the court, or the judge thereof in vacation, may make, and by attachment enforce, such orders for the disposition of the persons, property and children of the parties as may be deemed right and proper and such orders relative to the expenses of such suit and attorney fees as will insure to the wife an efficient preparation of her case and a fair and impartial trial thereof. . . ." Section 3-1216, Burns' 1946 Replacement.

As was said in *Snider* v. *Snider* (1913), 179 Ind. 583, 588, 590, 102 N. E. 32:

"The right of alimony whether *pendente lite* or permanent is founded on the common law obligation of the husband to support his wife and was recognized in ecclesiastical law. Subject to certain conditions, the wife is, in suits for absolute divorce, whether she be plaintiff or defendant, entitled upon application to temporary alimony where no statute provides for it. And it may be awarded notwithstanding statutes which give her control of her separate property and the benefit of her own earnings, although such statutes materially lessen the force of the reason upon which it is granted, and in such case the allowance is not made so much as a matter of course. It must be made to appear as one of the essential conditions upon which the wife will be granted the allowance, that she has not sufficient means to provide for her own support adequately and to pay the expenses of properly preparing and prosecuting or defending the action. The ability of the husband to pay should also be made to appear. . . .

"Whether the necessity for the allowance exists, and the ability of the husband to pay, as well as the amount to be allowed is within the sound discretion of the trial court to determine upon the facts before it. This judicial discretion is, it is true, subject to review on appeal, but it will be interfered with only when a clear abuse of it by unfair and arbitrary action is shown. . . .

"Although the fact that the wife has some property is a matter to be considered by the court in determining whether an allowance shall be made, as well as the amount of it, still, if it is not sufficient properly to support her and at the same time afford her the means to secure her an efficient preparation of her case and a fair trial without exhausting her own resources, an allowance is within the discretion of the court. . . . The statute means and intends a sum sufficient to insure an efficient preparation and a fair trial. And what is sufficient for the wife to obtain these results the court, under

all the facts and circumstances in each particular case, must determine.

"That an allowance of temporary alimony or suit money to a wife having some property or some credit is not necessarily an abuse of discretion on the part of the trial court has been decided by this court. . . ."

See also *Henderson* v. *Henderson* (1887), 110 Ind. 316, 11 N. E. 432, *supra; Hetherington* v. *Hetherington* (1928), 200 Ind. 56, 160 N. E. 345; *Pry* v. *Pry* (1947), 225 Ind. 458, 75 N. E. 2d 909.

When the evidence is viewed most favorable to the wife, the trial court could properly consider as proved the following material facts:

The parties were married October 5, 1920. They had two sons, the oldest being 28 years of age, married and living with his own family. The younger son, Jack, 23 years of age, was living with his mother except when he was attending Indiana University. The husband and wife owned as tenants by the entireties residence real estate worth $23,000 at 4206 Baring Street, East Chicago, in which there were three apartments being rented by the wife, and a 220 acre farm five miles south of Crown Point, worth $57,200, from which the husband was collecting all the landlord's rents and profits. The husband had incorporated the Calumet Rental & Realty Company, Inc., of East Chicago, which owned an apartment building at 1021 West 141 Street and an apartment building at 3428 Fir Street, both in East Chicago, which properties were reasonably worth $155,000. These properties were purchased with the husband's funds for $48,000 and then conveyed to the corporation by him.

The husband was a very evasive and forgetful witness as to the financial affairs of the corporation, and

as to the stock ownership therein. At the time of the hearing he was secretary-treasurer of the corporation, but several times during the hearing he stated he was not able to tell how much stock he owned, or his son Robert owned, or his wife owned, or Mr. Zandi owned, or Mr. Stepanovich, the latter being the attorney for the corporation. At the time of the hearing the parties' eldest son, Robert, was the president, and the husband thought that Mr. Zandi was a vice-president. At one time the wife had been president of the corporation, but she had assigned her stock in blank, and the certificates were never in her possession thereafter but were turned over to her husband. The wife was never notified of any directors or stockholders meeting of the corporation. However, at one time the husband "said that I [the wife] was president; he was secretary and treasurer and our oldest son, Robert Rooney, was vice-president; then if anything ever happened it would all be in our belongings."

The husband permitted the taxes on the home place and on the farm to become delinquent, and the wife borrowed $900.00 from her brother to pay one-half of the taxes on the farm and the home, which debt she is repaying at the rate of $50.00 a month. At the time of the hearing she had obtained work at the Inland Steel Company, her hours being from 4:00 P.M. until midnight, six days a week. She was 54 years of age, and was afraid it would not be possible for her to continue in such employment on account of her health. From this employment she received gross wages of $72.00 a week, and after all deductions, realized approximately $60.00 a week. The rentals from the apartments at the home property which she received gross $199.00 a month. This property needs many repairs including a new oil burner which would cost $350.00,

and repair to the chimney which would cost at least $65.00.

The husband had been city treasurer of East Chicago for two terms, and mayor for one term, during which time the couple entertained at their home, but the wife testified she was not able to entertain at the present time. In 1932 the husband bought her a mink coat that she still has. Since the separation the wife paid $11.50 for a suit and $7.00 for two dresses which she wears to work. She needs $300.00 for clothes for the winter. She does her own housework, washing and ironing, and cares for an old lady in her home for which she receives $8.00 a week. She has a deep freezer in the basement, and since the separation has received from the farm a quarter of beef and 200 pounds of pork. She has spent $197.50 for repairs and supplies for keeping up the apartments at her home. She has not been able to pay any money for her attorneys up to the time of the hearing.

The husband receives a gross salary in the sum of $300.00 a month as secretary-treasurer of the Calumet Rental & Realty Company, Inc. According to his testimony, for the years 1949, 1950, and the first six months of 1951, his net income after payment of federal taxes was $7,272.87.

Three lawyers testified as to the reasonable value of attorneys' fees. The wife's witness testified the reasonable value would be from $5,000 to $7,500, and the two witnesses for the husband testified that, on a per diem basis, a reasonable value for office work would be $75.00 to $100.00 per day, and for court work $100.00 to $150.00 per day. The court was familiar with the pleadings and records made in the entire case, and the court had the right to assume, in view of the husband's testimony denying knowledge as to how the

outstanding stock in the Calumet Rental & Realty Company, Inc. was held, that considerable time would be required by the lawyers to ascertain the true financial status of the corporation as well as the ownership of the stock.

Under the cases discussed in the first part of this opinion, we cannot say the trial court abused its discretion in fixing the amount of support for the wife to maintain her in the status she occupied prior to the separation, nor can we say there was any abuse of discretion in fixing preliminary attorneys' fees in the sum of $2,000.

The interlocutory order is affirmed.

NOTE.—Reported in 109 N. E. 2d 93.