**In re the Marriage of Nicholas A. SVE-TICH, Appellant (Respondent Below)**

v.

**Mary Josephine SVETICH, Appellee (Petitioner Below).**

**No. 3–1080A310.**

Court of Appeals of Indiana, Third District.

Aug. 31, 1981.

Rehearing Denied Oct. 26, 1981.

---

**3.** No evidence in addition to the affidavit was presented under IC 35–1–6–2(c).

William S. Spangler, Sr., Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for appellant.

J. Michael Katz, Katz, Brenman & Angel, Merrillville, for appellee.

HOFFMAN, Presiding Judge.

Nicholas A. Svetich, appellant-respondent, brings this interlocutory appeal from an order in a dissolution proceeding requiring him to pay attorney fees and expenses as well as arrearages in support payments to his wife, Mary Josephine Svetich, appellee-petitioner. The following issues are presented here:

(1) whether the trial court erred in ordering respondent to pay petitioner the sum of $14,984.76, for arrearages in the payment of petitioner's bills and expenses;

(2) whether the trial court erred in awarding $5,478.84 of the arrearages in that such amount was a reimbursement for petitioner's health and life insurance premiums;

(3) whether the trial court erred in awarding attorney fees *pendente lite* for legal services not yet performed;

(4) whether the trial court erred in awarding attorney fees to petitioner

where evidence showed that petitioner could pay her own fees; and

(5) whether the trial court erred in awarding petitioner costs for appraisal and accounting expenses for work not yet performed and which evidence showed petitioner could afford.

This action began when appellee-petitioner, Mary Josephine Svetich filed a petition for dissolution of marriage on September 28, 1976. On October 7, 1976, the parties filed a stipulation with the court in which the respondent agreed to pay monthly support in the sum of $800 to petitioner in addition to petitioner's medical, dental and hospitalization expenses. Subsequently, on June 20, 1980, petitioner filed her petition to modify provisional orders in which she requested increased support and payment of attorney fees. Following a hearing on the petition, the trial court ordered the respondent to pay $14,984.76 of petitioner's expenses for which he was in arrears including $5,478.84 for petitioner's life and health insurance premiums; $12,000 for provisional attorney fees; and $4,000 for use of petitioner's attorney to pay for necessary appraisal and accounting expenses.

During the first day of hearings on appellee's petition to modify, evidence was introduced by appellee indicating that the respondent had failed to comply with the original stipulation and was seriously in arrears on certain payments. Respondent, proceeding *pro se* at this time, failed to object to the introduction of much of this evidence until the following colloquy took place:

"MR. SVETICH: Your Honor, If you will excuse me, I would like to ask that this be recessed and that I have an attorney.

\*   \*   \*   \*   \*   \*

"MR. SVETICH: Well, your Honor, I came here thinking that we would discuss whether I am able or unable to pay these demands of $1500 a month and the attorney's fees of $15,000. I didn't expect to get into what I've just heard.

"THE COURT: Well, we are here to decide whether or not you can afford to pay an additional $1500 and whether or not you can afford to pay the $15,000. That's what we're here to decide."

Afterwards, the trial court denied respondent's request for a continuance and the hearing proceeded. In its order, the trial court specifically found that the arrears totaled $14,984.76 and ordered the respondent to pay that amount to the petitioner.

On appeal, respondent contends that the trial court improperly awarded the arrearages to the petitioner. The petition to modify did not request payment of the arrearages nor was the issue of arrearages tried by implied consent. Respondent further maintains that evidence concerning unpaid bills was relevant to show a need for increased support and that he had no notice that the arrearages were at issue.

It is clear that the issues of a case are determined, not by the pleadings, but by the evidence produced at trial. *Ayr-Way Stores, Inc. et al. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335. This is in accord with the language of Ind. Rules of Procedure, Trial Rule 15(B):

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Trial Rule 15(B) is liberally applied to permit amendment of the pleadings at any point in the proceeding where the parties consent to the trial of an unpleaded issue. *Midway Ford Truck Ctr., Inc. v. Gilmore* (1981), Ind.App., 415 N.E.2d 134. A formal motion to amend is not necessary. *Joy v. Chau* (1978), Ind.App., 377 N.E.2d 670. Where a trial ends without objection as to its course, the evidence controls and the unpleaded issue is deemed to be tried by consent of the parties. *Indpls. Transit v. Williams, etc.* (1971), 148 Ind.App. 649, 269 N.E.2d 543.

This broad ability to amend pleadings is not without boundaries. Before a party may impliedly consent to the trial of an unpleaded issue, he must be given some notice as to the existence of that issue. *Bahre v. Metropolitan Sch. Dist., etc.* (1980), Ind.App., 400 N.E.2d 197; *Aldon Builders, Inc. v. Kurland et ux.* (1972), 152 Ind.App. 570, 284 N.E.2d 826. The opposing party may not insert a new issue into a trial under the cloak of evidence relevant to an already pleaded issue. *Hacker v. Rev. Bd.* (1971), 149 Ind.App. 223, 271 N.E.2d 191. Both parties must litigate the new issue, and implied consent to the trial of that issue will not be found unless the parties know or should have known that the unpleaded issue was being presented. *Elkhart Cty. Farm Bur. Co-op. v. Hochstetler* (1981), Ind.App., 418 N.E.2d 280. As applied to the case at hand, the issue of the payment of arrearages was not tried by implied consent.

Certainly, petitioner's testimony regarding sums allegedly owed to petitioner by respondent is relevant to an issue other than the payment of arrearages. In her petition to modify, petitioner specifically requested an increase of her temporary support payments. Without a doubt, evidence that she had paid bills for which the respondent was allegedly responsible is probative on whether the petitioner needed more support. For this reason the respondent cannot be faulted for failing to object to the introduction of that evidence on relevancy grounds. When it finally appeared to the respondent that the petitioner was attempting to proffer a new issue, he immediately requested a continuance. At that time the trial court assured the respondent that the hearing was limited to the issues of increased support and attorney fees. After the reassurance by the trial court that the unpleaded issue of arrearages was not being tried, it was inequitable to later subject the respondent to an order to pay such arrearages. Therefore, that portion of the trial court order requiring the respondent to pay arrearages of $14,984.76 is reversed. Since the arrearage order is reversed, appellant's contention that a portion of the arrearage was incorrectly included because it constituted health and life insurance premiums need not be addressed here.

Appellant's third argument is that the trial court committed error by awarding attorney fees *pendente lite* for legal work not yet performed. Although the parties here seem to disagree as to whether the trial court in fact ordered attorney fees for future work, it will be assumed for purposes of this opinion that such is the case.

IC 1971, 31–1–11.5–16 (Burns 1980 Repl.) controls the award of attorney fees in a dissolution of marriage proceeding:

> "The court from time to time may order a party to pay a reasonable amount for the costs to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name."

This statute gives broad discretion to the trial court in awarding attorney fees and such an award will be reversed only where an abuse of that discretion is shown. *Johnson v. Johnson* (1979), Ind.App., 389 N.E.2d 719. The trial court may look at several factors in making its determination and the sole statutory guide is that the fee be reasonable. *Geberin v. Geberin* (1977), 172 Ind. App. 255, 360 N.E.2d 41.

The statutory authority for the allowance of attorney fees in a dissolution of marriage proceeding permits these awards to be made *pendente lite* or "pending the action." *See, Castor v. Castor* (1975), 165 Ind.App. 520, 333 N.E.2d 124. Attorney fees awarded *pendente lite* are part of what is generally known as "suit money." *Farley v. Farley* (1973), 157 Ind.App. 385, 300 N.E.2d 375. Long ago, the Indiana Supreme Court held that, when making an allowance for suit money *pendente lite*, the trial court has the power to make the allowance and order payment either before or after the expenses are incurred. *Davis v. Davis* (1895), 141 Ind. 367, 40 N.E. 803; *see also, Rooney v. Rooney* (1952), 231 Ind. 443, 109 N.E.2d 93 (attorney fees award upheld for legal work not yet completed). The power to award the expenses prospectively is consistent with the purpose of allowing suit money *pendente lite*.

Suit money is awarded *pendente lite* to insure that the party receiving the benefit is able to prepare an efficient case and have a fair and impartial trial. *Davis v. Davis, supra; Farley v. Farley, supra.* If a trial court is forbidden to make the award prospectively, the entire reasoning behind making the allowance *pendente lite* will be jeopardized. A party without funds would be forced to find an attorney who would be willing to either commit a large amount of time without any money "up front" or to petition the trial court for fee allowances piecemeal throughout the dissolution proceeding. This not only wastes precious court time and serves to run up the very fees at issue, but also would be senseless in a case like the one before us which has already been pending five years and for which there is no obvious end in sight. In this way, an award of attorney fees prospectively is much like a retainer, the amount of which is left to the wise discretion of the trial judge and which will be reversed only where that discretion is abused. The trial court here did not err by awarding attorney fees for future legal work in connection with the dissolution proceeding.

Appellant next contends that the trial court improperly awarded attorney fees to the petitioner where evidence showed that the petitioner could pay her own fees. Evidence elicited at the hearing indicated that the petitioner loaned the sum of $20,000 to her daughter. Respondent argues that this loan was in violation of a restraining order and that the petitioner should therefore be deemed to have the money in her possession. Whether or not this is a correct application of Indiana law, it will be assumed for purposes of this appeal that the petitioner does have the $20,000. The issue, then, is whether a trial court can properly award attorney fees to a party who can allegedly afford them.

Respondent cites *Bitner v. Bitner* (1950), 228 Ind. 259, at 263, 91 N.E.2d 169, at 170 for the following:

> "It is also the law that in a divorce proceeding if the wife has either funds or credit *sufficient* for the purposes of her defense and her present support it is improper for the court to require the husband to furnish money for such purposes pending the litigation." (Citations omitted.) (Emphasis added.)

Respondent seems to argue that this imposes a duty on the trial court to award attorney fees to a party only where it appears, in view of that party's assets alone, that such fees cannot be afforded. This reading of *Bitner* is incorrect in light of other Indiana precedent.

It has long been held that the fact that a party has property cannot, standing alone, bar a court from awarding attorney fees to that party in a dissolution. *Snider v. Snider* (1913), 179 Ind. 583, 102 N.E. 32. Counsel argued in *Snider* that allowance for suit money and temporary support would be an abuse of discretion if it appeared that the party seeking the benefit had some means or credit with which to pay the costs of case preparation. The Supreme Court rejected this contention as inconsistent with Indiana law. 102 N.E. at 33. It held that property at the party's disposal is to be considered in making the suit money allowance and if that property is not sufficient to insure an

efficient preparation of the case and to guarantee a fair and impartial trial, some allowance should be made. Both the necessity of an attorney fee allowance and the other party's ability to pay are left to the discretion of the trial court. 102 N.E. at 34. Practical equality between the parties is the goal in awarding suit money *pendente lite* and this goal is only achieved by looking at the assets of both parties.

*Bitner* is in accord with the *Snider* rationale. In *Bitner*, the Supreme Court held that a determination of whether the wife there had sufficient means to pay the costs of her case was left to the discretion of the trial court. 91 N.E.2d at 171. In addition, the *Bitner* court reversed the trial court decision only after looking at the relative financial standing of the parties. Thus, in *Bitner*, the assets of both parties were looked at.

More recently, this Court has held that, in exercising its discretion to award attorney fees *pendente lite* in a dissolution proceeding, the trial court may look at the superior earning power of the parties. *Wendorf v. Wendorf* (1977), Ind.App. 366 N.E.2d 703; *see also, Ross v. Ross* (1979), Ind.App., 397 N.E.2d 1066. Consistent with *Snider* and *Bitner*, the trial court must consider the resources of the party for whose benefit the order is sought. Nevertheless, the fact that the party has assets from which attorney fees could be paid, standing alone, does not forbid the award of attorney fees. 366 N.E.2d at 706.

It is clear from the trial court's findings of fact in this case that the assets of the petitioner as well as the respondent were considered. The trial court found that the petitioner's assets consisted of $7,000 in savings, 300 shares of stock and that she had loaned to her daughter $20,000. The court also found that the respondent owned two bakeries which provided him with disposable cash in excess of $50,000 a year, and that through the bakery corporations, respondent was purchasing land for investment in Idaho and Florida. After a comparison of the relative financial worth of the parties, the respondent has failed to show that the trial court abused its discretion in awarding attorney fees *pendente lite* to the petitioner. Since we hold that a trial court can award attorney fees pending the action for legal services not yet performed and that the trial court did not abuse its discretion in awarding those fees to the wife, who could allegedly afford them, and since the appellant discusses no other argument in his appellate brief as to the possible excessiveness of the fees, the trial court award of attorney fees pendente lite in the amount of $12,000 is affirmed.

The last issue presented by the appellant for consideration of this Court is whether the trial court erred in ordering the appellant to pay appraisal and accounting costs of $4,000 where evidence indicated that only $500 of such expenses had been incurred at the time of the hearing. Appellant objects to payment of these costs on two grounds. First, he argues that the award includes payment for expenses to be incurred in the future rather than expenses already earned. Second, he maintains that evidence showed that the petitioner had sufficient assets to pay for these expenses herself. Both of these arguments incorrectly interpret Indiana law. Suit money consists not only of attorney fees but also litigation expenses. *Farley v. Farley, supra.* Certainly appraisal and accounting costs are litigation expenses in this case. As such, where they are awarded *pendente lite*, they are subject to the same considerations as attorney fees as analyzed above. For the reasons discussed herein the award of $4,000 for appraisal and accounting expenses is affirmed.

In conclusion, the awards for attorney fees and accounting and appraisal expenses are affirmed, and the order for respondent to pay support arrearages is reversed.

Affirmed in part and reversed in part.

GARRARD and STATON, JJ., concur.