# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 23 2019, 9:11 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy D. Griner
Mishawaka, Indiana

ATTORNEY FOR APPELLEE

Thomas M. Dixon
Dixon, Wright & Associates, P.C.
Osceola, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Richardo A. Nevarez,

*Appellant-Respondent,*

v.

Maria Verduzco,

*Appellee-Petitioner,*

October 23, 2019

Court of Appeals Case No.
19A-DR-496

Appeal from the St. Joseph
Superior Court

The Honorable Margot F. Reagan,
Judge

Trial Court Cause No.
71D04-1606-DR-517

**Robb, Judge.**

# Case Summary and Issues

[1] Richardo Nevarez ("Husband") appeals the trial court's awards and division of property following his divorce from Maria Verduzco ("Wife"). Husband presents three issues on appeal, which we restate as: 1) whether the trial court abused its discretion by including certain property as a marital asset; 2) whether the trial court abused its discretion by deviating from the presumption of equal division of marital assets; and 3) whether the trial court abused its discretion by ordering Husband to pay Wife's attorney fees. Concluding that the trial court did not abuse its discretion in any respect, we affirm.

# Facts and Procedural History

[2] Husband and Wife were married on June 5, 2008. They have no children of the marriage; however, Wife has three children from a previous relationship. During the marriage, Husband was self-employed and owned a landscaping business and, later, a business through which he bought, rehabbed, and sold houses (hereinafter, "house-flipping business"). He operated his businesses on a cash basis and provided no evidence to the trial court regarding his income from the businesses. Wife, who is an undocumented immigrant, worked in a restaurant. Wife provided no specific evidence of her income but testified that she contributed between $400.00 and $450.00 bi-weekly to the parties' joint bank account for "rent and the bills." Transcript, Volume 2 at 9. She also testified that she assisted Husband in his house-flipping business but received no compensation for her work.

[3]     During the marriage, Husband purchased a house on East Fox Street in South Bend, Indiana. The parties, together, owned a 2003 Lincoln Navigator, a 1999 Ford Expedition, and a 2005 Harley Davidson motorcycle.[1] The Navigator and the Expedition each had a loan against it. The parties also carried credit card debt.

[4]     The parties separated in fall of 2015. On June 2, 2016, Wife filed a pro se Verified Petition for Dissolution of Marriage. In her petition, Wife indicated that there were no assets or debts of the marriage to be divided.[2]

[5]     No action was taken in the dissolution proceeding for approximately one year. On June 27, 2017, the trial court issued an order for the parties to show cause why the case should not be dismissed pursuant to Indiana Trial Rule 41(e). On August 14, 2017, Husband filed a request to keep the case open. On November 19, 2018, a final hearing was held. An interpreter was used during the proceedings because Wife does not speak or understand English.

[6]     On February 6, 2019, the trial court entered a final dissolution decree, accompanied by findings of fact and conclusions thereon, that dissolved the parties' marriage, deviated from an equal distribution of the parties' assets, and

---

[1] At some point, the Harley Davidson motorcycle was repossessed.

[2] At the final hearing, Wife offered testimony explaining why she asserted in her dissolution petition that there were no assets or debts of the marriage to be divided. She testified that, at some point, she signed a document that indicated that all of the marital property had been equally divided because she did not "have papers in this country, so the agreement was that I wouldn't request to keep anything and [Husband] would help me with the paperwork for my residency [in the United States]." Tr., Vol. 2 at 11. She further testified that Husband threatened to contact immigration services if she refused to sign the document.

detailed the distribution of the marital property. The trial court also required Husband to pay $3,000.00 of Wife's attorney fees. The trial court's findings, conclusions thereon, and decree provide in relevant part as follows:

Findings

*****

8. The assets of the marriage to be divided are as follows:

    a.    2003 Lincoln Navigator;

    b.    1999 Ford Expedition;

    c.    Real estate located at . . . E. Fox St., South Bend, Indiana . . . ;

    d.    1st Source Bank $1,000.00

9. The marital liabilities . . . are as follows:

    a.    Spring Leaf Financial (Navigator)    10,000.00

    b.    Sam's Club Mastercard    2,000.00

    c.    Sears    2,000.00

    d.    Capital One    777.00

    e.    One Main Financial (Expedition)    8,000.00

<u>Division of Marital Estate</u>

*****

In Indiana, there is a presumption that a marital estate be divided 50/50 upon the dissolution of the marriage. However, the presumption can be rebutted by introduction of evidence that shows that the Court should deviate from the equal division of property. In this situation, deviation is appropriate. First, there was a dearth of evidence as to the value of the marital assets. What evidence that was produced through testimony of the parties and exhibits was confusing to say the least. The parties contradicted themselves, as well. Wife's Verified Petition for Dissolution asserted that all the property and debts were already divided and at the end of the hearing, Husband stated he would pay all debts; he just wanted the divorce final. Yet the parties went through a trial rather than enter into an agreement up front.

Husband's businesses were operated on a cash basis and from some loans from his father and loans from some real estate businesses namely, Roma Real Estate, BP Housing, LLC, Dito's Investments, LLC and Peka Housing, LLC. Using loans, houses were purchased for his "flipping" business (buying a house, refurbishing it and selling it for a profit). The various companies (Roma, BP, Peka) would loan Husband [money] to buy and/or remodel. Husband would purchase the houses with the loans and transfer the quit claim deed to the creditor, who would then transfer the deed back after the loan was paid. Husband testified that such practice was "easier."

The real estate which was definitely a marital asset was located at . . . E. Fox St., South Bend, IN. A tax assessment history introduced at trial showed transfers from Peka (8-24-14) to Husband (2-19-15) to BP (12-16-16) to Husband (1-19-18) to Dito's (4-9-18) (this is [H]usband's company). The property was

assessed at approximately $48,000.00 during those years. Yet as recently as last year it was offered for sale by Husband at $28,000.00.

There was no testimony or exhibits reflecting possible rents Husband collected at times, so they can't be considered here.

Husband also had a landscaping business before he began his "flipping" business. There were apparently no tax returns or tax records kept for employees. There was no evidence regarding his income from that business.

There was some evidence that Husband most likely had sufficient amounts of money to travel, purchase vehicles, pay for a quinceañera[3] for his stepdaughter, but the evidence did not help the Court with valuing the marital estate.

Husband introduced a list of assets and liabilities. The one conclusion that can be reached is that debts are significantly higher than the value of assets.

Given the fact that little dependable information was produced at trial, the division of the marital assets and liabilities is as follows:

> 1. Husband will be responsible for all outstanding debts as of June 2, 2016, whether the debts are his alone, [Wife's] alone or are joint debts. Husband will retain possession of the Expedition, Navigator and any real estate that was or

---

[3] A quinceañera is "a celebration of a girl's 15th birthday, marking her transition from childhood to maturity." DICTIONARY.COM, https://www.dictionary.com/browse/quinceanera (last visited on Oct. 3, 2019).

now [is] in his possession including the . . . E. Fox Street house;

2. Husband will pay [W]ife's attorney fees in the amount of $3,000.00;

3. Husband will pay Wife $15,000.00 which reflects the sum of $1,000.00 in [the] lst Source Bank [account] and ½ of the sale of . . . E. Fox Street assuming it was sold for $28,000.00. . . .

Appealed Order at 1-4 (internal citations omitted).

[7] Husband now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Standard of Review

[8] According to the record before us, neither party filed a Trial Rule 52(A) written request with the trial court for special findings and conclusions thereon. Instead, at the conclusion of the final hearing, the trial court directed the parties to submit to the court "proposed values, backed up by some evidence, and the proposed division[,]" along with "the reasons for your - - the way you compute the division that you support." Tr., Vol. 2 at 54. We therefore treat the trial court's findings as sua sponte findings of fact. *See Piles v. Gosman*, 851 N.E.2d 1009, 1012 (Ind. Ct. App. 2006); *see also Estudillo v. Estudillo*, 956 N.E.2d 1084, 1089 (Ind. Ct. App. 2011).

[9] Sua sponte findings control only as to the issues they cover, and a general judgment standard will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). We will affirm a general judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id.* When a court has made special findings of fact, we review sufficiency of the evidence using a two-step process. *Id.* First, we must determine whether the evidence supports the trial court's findings of fact. *Id.* Second, we must determine whether those findings of fact support the trial court's conclusions of law. *Id.*

[10] We "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A).

> A decision is clearly erroneous if it is clearly against the logic and effect of the facts and circumstances before the dissolution court, or if a review of the record leaves this court with a firm conviction that a mistake has been made. In making this determination, we will not weigh the evidence or make credibility determinations, and we will only consider the evidence favorable to the judgment and reasonable inferences drawn therefrom.

*R.R.F. v. L.L.F.*, 956 N.E.2d 1135, 1139 (Ind. Ct. App. 2011) (internal citation omitted). "Findings are clearly erroneous if there are no facts in the record to support them either directly or by inference, and a judgment is clearly erroneous if the wrong legal standard is applied to properly found facts." *Crider v. Crider*, 26 N.E.3d 1045, 1047 (Ind. Ct. App. 2015). "[W]e may look both to

other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court." *Stone v. Stone*, 991 N.E.2d 992, 998 (Ind. Ct. App. 2013), *aff'd on reh'g,* 4 N.E.3d 666.

[11] On appeal, Husband specifically contends that the trial court abused its discretion by: including the East Fox Street house as a marital asset, deviating from the presumption of equal division of marital assets, and awarding Wife attorney fees. We address each argument in turn.

## II. Marital Assets and Division of Marital Property

### A. Standard of Review

[12] The division of marital assets is within the trial court's discretion, and we will reverse a trial court's decision only for an abuse of discretion. *O'Connell v. O'Connell*, 889 N.E.2d 1, 10 (Ind. Ct. App. 2008). The "party challenging the trial court's division of marital property must overcome a strong presumption that the trial court considered and complied with the applicable statute, and that presumption is one of the strongest presumptions applicable to our consideration on appeal." *Id.* (internal quotations omitted). On review, we will neither reweigh evidence nor assess the credibility of witnesses, and "we will consider only the evidence most favorable to the trial court's disposition of the marital property." *Id.*

[13] In dissolution proceedings, the trial court is required to divide the property of the parties "in a just and reasonable manner[.]" Ind. Code § 31-15-7-4(b). This division of marital property is a two-step process. *O'Connell*, 889 N.E.2d at 10.

First, the trial court must ascertain what property is to be included in the marital estate; second, the trial court must fashion a just and reasonable division of the marital estate. *Id.* at 10-11.

## B. Inclusion of East Fox Street House as a Marital Asset

[14] Husband first contends that the trial court abused its discretion when it included the East Fox Street house as a marital asset. Husband maintains that the house should be excluded from the marital pot for the following reasons:

> The house on Fox Street was transferred to BP Housing on February 9, 2015, six months prior to the parties' separation in August 2015 (and over a year before the petition for dissolution was filed). The house was not titled to Husband on the date of separation. Wife filed for divorce on June 2, 2016. The Fox Street house was still not titled in Husband's name and Husband was in a lengthy litigation regarding the property. Wife was aware that there was no marital property because in her petition for dissolution she stated under oath that there were no assets or debts to be divided. The Fox Street house was not transferred to Husband until December 16, 2016. Husband, not Wife, engaged in an almost two-year litigation regarding the property. Husband, not Wife, paid $6,000 to clear liens on the property.

Appellant's Brief at 9 (internal citations omitted). According to Husband, the house "was not owned by Husband when [the parties] separated; not owned by Husband when the petition for dissolution was filed; was not procured by joint efforts with Wife and[,] therefore[,] should not have been included as a marital asset." *Id.*

In Indiana, it is well-established that all marital property goes into the marital pot for division, whether it was owned by either spouse prior to the marriage, acquired by either spouse after the marriage and prior to the parties' final separation, or acquired by their joint efforts. *Hill v. Hill*, 863 N.E.2d 456, 460 (Ind. Ct. App. 2007); *see also* Ind. Code § 31-15-7-4(a). This "one-pot" theory ensures that all of the parties' assets are subject to the trial court's power to divide and award. *Hill*, 863 N.E.2d at 460. "While the trial court may ultimately determine that a particular asset should be awarded solely to one spouse, it must first include the asset in its consideration of the marital estate to be divided." *Id.*

At the final hearing, Husband testified that he purchased the East Fox Street house during the parties' marriage. Wife testified that Husband purchased the house in 2012, during the parties' marriage, and that she remembered the timeframe in which the house was purchased because after Husband purchased the house, Wife "helped [Husband] fix it and paint it so that [Husband] could rent it." Tr., Vol. 2 at 10-11. This evidence is sufficient to support the trial court's inclusion of the house in the marital pot.

Furthermore, the fact that the house was transferred multiple times between Husband and certain real estate holding companies, one of which Husband owned, is of no moment and does not warrant the exclusion of the house as a marital asset because the house was initially purchased during the marriage and had yet to be disposed of at the time Wife filed her dissolution petition. The

house was properly included in the marital pot, and the trial court did not abuse its discretion in doing so.

## C. Deviation from Equal Division of Marital Assets

[18] Husband next argues that the trial court abused its discretion when it deviated from an equal division of the parties' marital assets. In determining how to divide a marital estate, the trial court "shall presume that an *equal* division of the marital property between the parties is just and reasonable." Ind. Code § 31-15-7-5 (emphasis added). However, this is a rebuttable presumption, and a party may present relevant evidence to establish that an equal division would not be just and reasonable. *Id.* The trial court may consider evidence of the following factors in deciding whether it would be appropriate to deviate from the presumption of an equal division:

> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

> (2) The extent to which the property was acquired by each spouse:

>> (A) before the marriage; or

>> (B) through inheritance or gift.

> (3) The economic circumstances of each spouse at the time the disposition of the property is to become effective[.]

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

(A) a final division of property; and

(B) a final determination of the property rights of the parties.

*Id.* If the trial court determines that a party opposing an equal division has met his or her burden under the statute, the trial court must state its reasons for deviating from the presumption of an equal division in its findings and judgment. *Chase v. Chase*, 690 N.E.2d 753, 756 (Ind. Ct. App. 1998).

[19] According to Husband, the trial court failed to identify any factors that would render a deviation from an equal division of the parties' marital assets appropriate, including the actual incomes of the parties. He also argues that Wife should be responsible for half of the marital debts, and the trial court's "order making Husband solely responsible for the debt is an abuse of discretion as the court's findings do not support such a conclusion." Appellant's Br. at 11. We disagree.

[20] In support of its decision to deviate from the presumption of an equal division, the trial court relied on the following evidence presented at the final hearing: Husband owned a house-flipping business, employed individuals to work in his business, and was able to pay his vendors; Wife worked in a restaurant and

contributed between $400.00 and $450.00 bi-weekly to the parties' joint bank account; Wife also helped Husband with his house-flipping business but received no compensation; Husband purchased the East Fox Street house, and Wife helped him repair and renovate it; however, again, Wife was not compensated for her efforts; and, during the marriage, Husband was able to finance two personal trips to Ecuador and his stepdaughter's quinceañera. As for the debt, Husband alone secured the loans against the Navigator and Expedition. He testified that all of the debt of the marriage was in his name and that he was making payments to satisfy the debt.

[21] The trial court acknowledged that there was a "dearth of evidence as to the value of the marital assets" and that "little dependable information was produced at trial[.]" Appealed Order at 2, 4. Nevertheless, the court found that a deviation from the presumption of an equal division of the marital property was appropriate because "Husband's businesses were operated on a cash basis and from some loans procured from [Husband's] father and loans from some real estate businesses[.]" *Id.* at 3. The trial court also found that, while "[t]here was no evidence regarding [Husband's] income from [the house-flipping] business[,]" there was evidence presented that Husband had money to travel, purchase vehicles, and pay for his stepdaughter's quinceañera. *Id.*

[22] "A party who challenges the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute." *Wanner v. Hutchcroft*, 888 N.E.2d 260, 263 (Ind. Ct. App. 2008). Husband has not overcome this presumption. We, therefore,

conclude that the trial court did not abuse its discretion when it deviated from the presumed equal division of the parties' marital property.

# III. Attorney Fees

[23] Finally, Husband contends that the trial court abused its discretion by requiring him to pay Wife's attorney fees in the amount of $3,000.00. Indiana statutory law pertaining to dissolution proceedings authorizes a court to order a party to pay the attorney fees of the other party. Indiana Code section 31-15-10-1(a) reads:

> The court periodically may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees and mediation services, including amounts for legal services provided and costs incurred before the commencement of the proceedings or after entry of judgment.

The legislative purpose of this statute is to provide access to an attorney to a party in a dissolution proceeding who would not otherwise be able to afford one. *Balicki v. Balicki*, 837 N.E.2d 532, 543 (Ind. Ct. App. 2005), *trans denied*.

## A. Standard of Review

We review a trial court's award of attorney fees in connection with a dissolution decree for an abuse of discretion. *Hartley v. Hartley*, 862 N.E.2d 274, 286 (Ind. Ct. App. 2007). Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. *Bessolo v. Rosario*, 966 N.E.2d 725, 733 (Ind. Ct. App. 2012), *trans. denied.*

In assessing attorney fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors bearing on the reasonableness of the award. *Id.* In addition, any misconduct on the part of a party that directly results in the other party incurring additional fees may be taken into consideration. *Id.* "Further, the trial court need not give its reasons for its decision to award attorney's fees." *Id.* (quoting *Thompson v. Thompson*, 811 N.E.2d 888, 928 (Ind. Ct. App. 2004), *trans. denied*).

## B. Attorney Fees Awarded to Wife

[24]　Here, according to Husband, "[t]here was no evidence and the trial court made no findings regarding the economic status of either Husband or Wife[;]" thus, "[t]he evidence does not support the conclusion that attorney fees should be awarded to Wife." Appellant's Br. at 12. Husband also argues that the amount awarded, $3,000.00, is "arbitrary and capricious" because there was "no testimony from Wife regarding her attorney expenses, no billing statement, no evidence about the time the attorney put into the case, and no finding that this amount was a customary or reasonable amount of fees." *Id.* We find, however, that the trial court's award of attorney fees to Wife is supported by the record.

[25]　Evidence was presented at the final hearing that there was a disparity in the parties' resources and the relative earning ability of the parties. Wife testified that she worked in a restaurant and also worked with Husband in his house-flipping business. She was compensated for her work at the restaurant but not

for the work she performed for Husband's business. Husband did not offer evidence of his actual income; however, evidence was presented that Husband ran a successful business that employed multiple employees. The trial court found that Husband likely had sufficient amounts of money to travel, purchase vehicles, and pay for his stepdaughter's coming-of-age party. Husband also had the ability to borrow money. This evidence supports the trial court's award of attorney fees to Wife and there was no abuse of discretion.

[26] Regarding the amount of the award, when Wife filed her post-trial brief with the trial court, she specifically requested that the court award her attorney fees in the amount of $3,000.00. Husband had the ability to subpoena an itemized account of Wife's attorney fees but did not do so. As such, the trial court was within its discretion to rely upon Wife's post-trial brief to establish the award amount. *See, e.g., Thompson*, 811 N.E.2d at 928 (husband argued trial court erred when it based the award of attorney fees to wife on wife's "self-serving testimony"; we determined husband had ability to subpoena itemized account of wife's attorney fees but failed to do so, and trial court was within its discretion to rely upon wife's testimony to establish award amount); *see also, Svetich v. Svetich*, 425 N.E.2d 191, 195 (Ind. Ct. App. 1981) ("[T]he trial court has the power to make the allowance and order payment [of attorney fees] either before or after the expenses are incurred."). In light of the evidence of record, we cannot say that the trial court's decision to award Wife $3,000.00 in attorney fees is clearly against the logic and effect of the facts and

circumstances before the court. Therefore, the trial court did not abuse its discretion.

# Conclusion

Based on the foregoing, we conclude that the trial court did not abuse its discretion when it included the East Fox Street house as a marital asset, deviated from the presumed 50/50 split when it distributed the marital property of the parties, and awarded Wife attorney fees. The judgment of the trial court is affirmed.

Affirmed.

Mathias, J., and Pyle, J., concur.