The STATE EXCHANGE BANK OF CULVER, Indiana, Defendant-Appellant,

v.

Ernest E. TEAGUE and Bertha Teague, Plaintiffs-Appellees.

No. 3–984A254.

Court of Appeals of Indiana, Third District.

July 24, 1986.

William L. Fortin, Stevens, Travis, Fortin, Lukenbill & Burbrink, Plymouth, Anthony W. Mommer, Kevin A. Hoover, Krieg DeVault Alexander & Capehart, Indianapolis, for defendant-appellant.

Tony H. Abbott, Foley & Abbott, Indianapolis, for plaintiffs-appellees.

GARRARD, Judge.

Ernest and Bertha Teague (Teagues) brought this action against the State Exchange Bank of Culver, Indiana (Bank) and others,[1] seeking compensatory and punitive damages stemming from a grossly mishandled repossession which had been initiated by the Bank.

From May of 1973 through July of 1974, the Bank made several loans to the Teagues to be invested in the Teagues' farming operation. The last of these loans was given on July 30, 1974 for the purpose of consolidating the Teagues' indebtedness with the Bank into a single promissory note in the amount of $8,836.16. To secure this loan the Teagues gave the Bank a security interest in their livestock, farm machinery

---

1. The Teagues' complaint also named Robert Newgent, the Sheriff of Fulton County, Orland Boone, who was doing business as the Rochester Sale Barn, and the Commissioners of Fulton County as defendants. The Honorable Richard W. Sand of the Kosciusko County Circuit Court granted summary judgment in favor of the commissioners on July 24, 1978. The trial court concluded that the Teagues had not complied with the notice provision of the Indiana Tort Claims Act by failing to file a notice of claim within 180 days of the incident giving rise to the suit. IC 34-4-16.5-7. The trial court also granted summary judgment in favor of both Sheriff Newgent and Orland Boone based on the same failure to give notice. This court affirmed the trial court's action in *Teague v. Boone* (1982), Ind.App., 442 N.E.2d 1119, finding that Newgent and Boone both fit the statutory definition of a public employee under IC 34-4-16.5-2, necessitating timely notice to the applicable political subdivision. IC 34-4-16.5-7.

and equipment, feed, seed, fertilizer and other supplies used in the farming operation, as well as those crops to be grown and harvested during the 1974 farm season. The loan was to be repaid in four months. The Teagues were unable to meet this time constraint and defaulted on the note. Thereafter, the Bank filed its replevin action against the Teagues on January 21, 1975, seeking a personal judgment against the Teagues on the note and seeking recovery of the collateral in which the Bank held its security interest. The replevin action was filed in the Fulton Circuit Court.

Within a month the Fulton Circuit Court issued a prejudgment order of possession on Bank's motion, ordering Sheriff Newgent to seize the Teagues' livestock and farming equipment on March 5, 1975. The Fulton Circuit Court instructed Sheriff Newgent to deliver the property to the Bank unless the Teagues put up a redelivery bond by March 18. On the morning of March 5, Ernest Teague convinced the Sheriff to delay the repossession until he had a final opportunity to meet with the Bank's president, whom Teague claimed had agreed to delay the repossession while the Teagues sought refinancing. Being unsuccessful at the Bank, Teague returned to his farm to find a rather chaotic repossession underway.

The repossession was described by Sheriff Newgent as a "free for all" with 100 or more people scurrying about the farm. Newgent indicated that while he knew most of these people were not authorized to aid in the repossession, he could not control the crowd with his small staff. No inventory was taken while the Teagues' property was being seized. When the repossession was over, there was nothing left on the farm.

Approximately 55 head of cattle seized during the repossession were transported to the Rochester Sale Barn. Although the Teagues had until March 18 to file a redelivery bond and get the cattle back, Orland Boone, the owner of the Rochester Sale Barn, sold the cattle on March 8. Boone testified that he sold the cattle on March 8 as per the instructions of Newgent given before the repossession had even occurred. Newgent denied instructing Boone to sell the cattle on March 8. The Bank filed a petition to have the sale approved by the Fulton Circuit Court, alleging that the sale was made "by error and inadvertence, and due to mistake and misunderstanding." Bank's Exhibit 34. The Teagues' first attorney responded to this petition with a request for additional time within which to investigate and respond to the Bank's attempt to have the premature sale approved. Within this request for additional time the Teagues' attorney noted discrepancies between the Sheriff's inventory of items seized and the items which the Teagues claimed were taken.

At this point the Teagues began going through several attorneys, missing many court dates and requesting numerous continuances. No responsive pleading was ever filed by the Teagues in answer to the Bank's original replevin complaint. The Fulton Circuit Court found the Teagues to be in default and eventually approved the sale of the livestock at the Rochester Sale Barn. On December 23, 1975, the Fulton Circuit Court entered a default judgment against the Teagues. The court directed the Bank to deduct the net proceeds obtained from the sale of the Teagues' farm equipment from the judgment amount once the equipment was sold.

The Teagues brought the present action to recover compensatory damages for the livestock and equipment seized and unaccounted for, for the sale of the livestock by the Rochester Sale Barn at an amount less than the fair market value, and for the mental anguish suffered by the Teagues as a result of the abusive repossession and the consequences therefrom. The Teagues also sought punitive damages. After summary judgment was entered in favor of all defendants except the Bank due to the Teagues' failure to comply with the Tort Claims Act, the trial was held and the case went to the jury. The Teagues attempted to prove that the Bank had virtually assumed control of the repossession and

should therefore be responsible for the damages stemming from the manner in which it was conducted. A verdict was returned for the Teagues with compensatory and punitive damage awards totalling $440,000. The Bank now appeals.

Throughout the course of this litigation the Bank has maintained that the Teagues' claims were barred by the doctrine of res judicata. Close to one-third of the Bank's over thirty assignments of error bear directly on the issue of what effect, if any, the Bank's original replevin action has on the claims now raised. While a discussion of the res judicata issue is not necessary to our disposition of this appeal, it could be helpful to the parties upon remand.

The Indiana courts have consistently required the presence of four elements to merit the application of res judicata:

"The basic elements of res adjudicata are four-fold: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the matter now in issue was, or might have been, determined in the former suit; (3) the particular controversy adjudicated in the former action must have been between the parties to the present suit; and (4) judgment in the former suit must have been rendered on the merits. *Middlekamp v. Hanewich* (1977), 173 Ind.App. 571, 364 N.E.2d 1024, 1033; *Crown Point School Corp. v. Richards* (1973), 154 Ind.App. 545, 549, 290 N.E.2d 449, 452; *Wright v. Kinnard* (1970), 147 Ind. App. 484, 488, 262 N.E.2d 196, 199–200."

*Moxley v. Indiana Nat. Bank* (1982), Ind. App., 443 N.E.2d 374, 377 (quoting from *Blake v. Blake* (1979), 181 Ind.App. 304, 391 N.E.2d 848, 851). Only the second element, whether the Teagues' claims were, or might have been, determined in the Bank's original replevin action, is subject to any dispute. (A default judgment is a judgment on the merits for purposes of res judicata. *Patterson v. State* (1859), 12 Ind. 86.)

■ A replevin action is a speedy statutory remedy designed to allow one to recover possession of property wrongfully held or detained as well as any damages incidental to the detention. *Wardman-Justice Motors v. Petrie* (D.C.Cir.1930), 39 F.2d 512, 515. The only issue *necessarily* decided in a replevin action is the right to present possession. *McFadden v. Ross* (1886), 108 Ind. 512, 8 N.E. 161. Of course, the judgment entered in a replevin action is conclusive as to all questions which were litigated or which might have been litigated under the issues. *McFadden v. Ross, supra; McFadden v. Fritz* (1886), 110 Ind. 1, 10 N.E. 120.

■ In the present case, the Bank's replevin action put into issue the size of the Teagues' indebtedness to it and its right to possession of the Teagues' livestock and equipment pursuant to the security agreement. After the premature sale of the Teagues' livestock and the Bank's request that such sale be approved, the value of the livestock sold clearly became a question that needed to be answered before the court could determine the remaining indebtedness of the Teagues to the Bank. In fact, the court eventually approved the sale of the livestock by the Rochester Sale Barn as commercially reasonable in spite of the fact that the Teagues had no notice of the sale and that the sale was had before the time in which the Teagues had to file a redelivery bond had run. *See* IC 34–1–11–18 (court may direct the sheriff to sell perishable goods which have been attached upon reasonable notice). In approving the sale, the Fulton Circuit Court determined that the sale price represented the fair market value of the livestock. If the Teagues had had any complaint concerning the value for which the livestock was sold or the fact that they were not notified of the sale, the forum for these complaints would have been either the Fulton Circuit Court during the replevin proceedings or this court by perfecting an appeal from the Fulton Circuit Court action. To the extent that the jury was allowed to consider whether the livestock was sold at a fair price in the present action, such was error. The Teagues are barred from relitigating the fair market value of the livestock or

the reasonableness of the sale and cannot now receive compensatory damages concerning the sale. These issues were addressed by the Fulton Circuit Court and cannot be relitigated.

The Bank has also argued that the Teagues put the issue of any discrepancy between what they claim was taken and what the sheriff's inventory listed as taken into the replevin action when the Teagues' attorney alluded to the discrepancies in his motion for additional time to respond to the Bank's requested approval of the livestock sale. The Bank argues that motion for additional time can be construed as a pleading and that for the purpose of applying res judicata, the pleadings should determine what was in issue before the Fulton Circuit Court. *Blake v. Blake* (1979), 181 Ind.App. 304, 391 N.E.2d 848, 851. This argument must fail for several reasons.

Indiana Rules of Procedure, Trial Rule 7(A)(1)–(5) sets forth five particular documents which are considered pleadings:

"(A) Pleadings. The pleadings shall consist of:

(1) a complaint and an answer;

(2) a reply to a denominated counterclaim;

(3) an answer to a cross-claim;

(4) a third-party complaint, if a person not an original party is summoned under the provisions of Rule 14; and

(5) a third-party answer."

Further, a motion is not considered a pleading. *Seastrom, Inc. v. Amick Construction Co., Inc.* (1974), 159 Ind.App. 266, 306 N.E.2d 125, 127. In the replevin action the Teagues' attorney merely requested additional time within which to respond to the Bank's requested approval of the livestock sale. Such a request simply cannot be considered a pleading from which it can be determined what issues were before the Fulton Circuit Court.

The Bank's argument that the discrepancy between the sheriff's inventory and what the Teagues claim was taken was

before the Fulton Circuit Court fails for an even more basic reason. Where a default judgment is entered, only those issues presented by the complaint can be deemed concluded; the defaulting party cannot be charged with admitting matters not within the complaint by his default. *Pence v. Long* (1906), 38 Ind.App. 63, 77 N.E. 961; 17 I.L.E. *Judgment*, Sec. 375, at 412 (1959); 47 Am.Jur.2d *Judgments*, Sec. 1202, at 216 (1969).[2] In its entry of default, the Fulton Circuit Court noted that the Teagues had failed to file an answer or any other responsive pleading to the Bank's complaint. The Teagues' claims for damages from the mishandled repossession did not accrue until March 5, 1975, well after the time for filing an answer had expired. Therefore, the Teagues' claims cannot be considered compulsory counterclaims under TR 13(A). This much the Bank admits.

The Bank's replevin action sought judgment on the Teagues' indebtedness to it and for possession of the collateral securing the promissory note. The Teagues' claims on the other hand refer to the manner in which the Bank went about securing possession of the collateral. At best, the Teagues *could* have asserted their claims in the Fulton Circuit Court action as permissive counterclaims under TR 13(B), but they were not obliged to do so. Section 22 of the Restatement 2d of Judgments provides:

"(1) Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim, except as stated in Subsection (2).

(2) A defendant who may interpose a claim as a counterclaim in an action but fails to do so is precluded, after the rendition of judgment in that action, from maintaining an action on the claim if:

(a) The counterclaim is required to be interposed by a compulsory counterclaim statute or rule of court, or

2. While we acknowledge that the importance of this rule may have diminished with the advance of notice pleading, the rationale remains viable today.

(b) The relationship between the counterclaim and the plaintiff's claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action."

Restatement 2d, Judgments, Sec. 22, at 185 (1982). The Restatement explains the rationale for providing a litigant with the option found in subsection (1) as

"In the absence of a statute or rule of court otherwise providing (see Subsection (2)(a) and Comment e), the defendant normally has the option of interposing a claim as a counterclaim or of bringing a separate action against the plaintiff. The justification for the existence of such an option is that the defendant should not be required to assert his claim in the forum or the proceeding chosen by the plaintiff but should be allowed to bring suit at a time and place of his own selection.

"Even in jurisdictions having a statute or rule making certain counterclaims compulsory, such provisions may not apply when no answer or other responsive pleading is filed, and generally do not apply when the counterclaim does not arise out of the same transaction or occurrence as the plaintiff's claim. See Rule 13(a) of the Federal Rules of Civil Procedure, quoted in Comment e, below."

*Id.* at 185–86. The Teagues' claims against the Bank for the grossly mishandled repossession are not barred by res judicata.

One of the Bank's contentions is that the trial court erred by instructing the jury on a negligence theory when that theory had not been raised against the Bank by the pleadings, the pretrial order or any amendment to the pleadings by way of Trial Rule 15(B). The Teagues, in fact, did not submit the negligence instructions or suggest that negligence was a theory applicable to their case against the Bank. The theories upon which the Teagues sought to hold the Bank liable were crystallized in their pretrial order, wherein the Teagues claimed that the Bank was liable for "unlawful conversion, theft, misrepresentation, and violation of rights pursuant to [the code provisions governing replevin actions (IC 34-1-9.1-1 et seq.)]." (Record at 517) The negligence instructions were supplied, as were all of the final instructions, by the trial court itself.

At the close of the evidence, the trial court and the parties reviewed the final instructions that were to be given to the jury so that any objections to these instructions could be recorded. It was during this procedure that the trial court notified both parties of its intention to delete the Teagues' theft theory from the final instructions and insert the instructions concerning a negligence theory. Our review of the record confirms that this was the first overt manifestation that recovery would be sought against the Bank based upon the theory of negligence.

TR 15(B) provides:

"(B) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

█ The Indiana Supreme Court in *Ayr-Way Stores, Inc. v. Chitwood* (1973), 261 Ind. 86, 300 N.E.2d 335, explained that the policy behind TR 15(B) is "to promote relief

for a party based upon the evidence actually forthcoming at trial, notwithstanding the initial direction set by the pleadings." 300 N.E.2d at 338. The Supreme Court went on to quote with approval a passage from *Indianapolis Transit System, Inc. v. Williams* (1971), 148 Ind.App. 649, 269 N.E.2d 543, wherein the court discussed the effect of TR 15(B) as follows:

"Whether the 'issues' to be tried in any law suit are formed by the pleadings or in a pre-trial order, their function is merely to provide the parties and the court with an itinerary for the journey through the trial. Either party may timely demand strict adherence to the predetermined route or, if deviation is permitted, the time necessary to prepare to meet the new issue. But when the trial has ended without objection as to the course it took, the evidence then controls. Neither pleadings, pre-trial orders, or 'theories' postulated by either party should then operate to frustrate the trier of fact in finding the facts which that evidence (including all reasonable inferences the trier may draw therefrom) convinces him (whether he be a judge or juror), by a preponderance thereof, is true or block him from awarding the relief, if any, which the rules of substantive law say those facts merit. 269 N.E.2d at 550."

*Ayr-Way Stores, Inc.*, 300 N.E.2d at 340. Furthermore, failure to amend the pleadings to raise issues which were not originally set forth in the pleadings will not affect the result of a trial on these issues where they are tried with the express or implied consent of the parties. TR 15(B); *Joy v. Chau* (1978), 177 Ind.App. 29, 377 N.E.2d 670, 676 ("When and if evidence is presented that is not within the purview of the pleadings or the pretrial order, the party opposing such evidence must object to its admittance, or the issue supported by the evidence will be impliedly consented to be tried by that party").

In *Svetich v. Svetich* (1981), Ind.App., 425 N.E.2d 191, this court noted that the implied consent doctrine is not without its limitations and set forth the following rules:

"Before a party may impliedly consent to the trial of an unpleaded issue, he must be given some notice as to the existence of that issue. *Bahre v. Metropolitan Sch. Dist., etc.* (1980), Ind.App. 400 N.E.2d 197; *Aldon Builders, Inc. v. Kurland et ux.* (1972), 152 Ind.App. 570, 284 N.E.2d 826. The opposing party may not insert a new issue into a trial under the cloak of evidence relevant to an already pleaded issue. *Hacker v. Rev. Bd.* (1971), 149 Ind.App. 223, 271 N.E.2d 191. Both parties must litigate the new issue, and implied consent to the trial of that issue will not be found unless the parties know or should have known that the unpleaded issue was being presented. *Elkhart Cty. Farm Bur. Co-op. v. Hochstetler* (1981), Ind.App., 418 N.E.2d 280."

425 N.E.2d at 194. Judge Robertson, in *Bahre v. Metropolitan Sch. Dist. etc.* (1980), Ind.App., 400 N.E.2d 197, explained how the concept of fairness requires some notice of an unpleaded issue before a party is charged with impliedly consenting to it:

"As previously discussed, the purpose behind the rule is to allow the parties some flexibility in litigating the case, and to further justice by allowing the evidence brought forth at trial [to] determine the parties' liability. The basic text of fairness would indicate that a 'party is entitled to some notice that an issue is before the court which has not been pleaded or has not been agreed to in a pre-trial order.' *Aldon Builders, Inc. v. Kurland* (1972), 152 Ind.App. 570, 580, 284 N.E.2d 826, 832. The court of appeals in justifying this requirement stated that 'This is especially true where the new issue is not unequivocally clear by the evidence being submitted. This is not being technical. This is being fair. A party should be given an opportunity to meet the issues which the court is considering.' *Id.; Fisel v. Yoder* (1974), 162 Ind.App. 565, 320 N.E.2d 783; *Hormuth Drywall v. Erectioneers, Inc.*

(1978), Ind.App. [178 Ind.App. 16], 381 N.E.2d 490."

400 N.E.2d at 200. *See also* 6 Wright & Miller, *Federal Practice and Procedure*, Sec. 1493, at 466–7 (1971) and 3 Moore, *Moore's Federal Practice* Para. 15.13[2], at 15–171 to 172 (1980) (both discussing Rule 15(b) of the Federal Rules of Civil Procedure, which rule is identical to Indiana's Trial Rule 15(B)).

■ Notice can be overt, as where the unpleaded issue is expressly raised prior to or sometime during the trial but before the close of evidence. *See, e.g., Terre Haute Regional Hosp., Inc. v. El-Issa* (1984), Ind. App., 470 N.E.2d 1371 (breach of contract theory while unpleaded was raised several times during the course of the trial by way of a preliminary instruction, the voir dire of potential jurors and in response to the defendants' motions for judgment on the evidence at the close of plaintiff's case in chief). Notice may also be implied where the evidence presented at trial is such that a reasonably competent attorney would have recognized that the unpleaded issue was being litigated. *See, e.g., Bahre v. Metropolitan School Dist., etc., supra* (plaintiff sued on a breach of contract theory and defendant could not be charged with impliedly consenting to a negligence theory where the record lacked any evidence pertaiing to a negligence theory from which notice could be implied).

■ In the present case, it is clear that the Bank did not receive any overt notice that a negligence theory was being considered until after the close of evidence when the trial court informed the parties that it would instruct the jury on negligence. The question thus becomes whether the evidence presented at trial would have put a reasonably competent lawyer on notice that the unpleaded issue of the Bank's alleged negligence was being litigated. Our review of the record convinces us that there was no evidence pertaining solely to a negligence issue such that the Bank's attorneys should have recognized that that issue was being litigated. In-

deed, in their appellees' brief the Teagues admit:

"The evidence presented on the Teagues' theor[ies] of conversion, theft, misrepresentation and violations of Indiana statutes was the same evidence which supported the theory of negligence. No special evidence was adduced in an effort to force the negligence theory into the case."

Appellees' Brief at 78. As previously indicated in *Svetich*, a party "may not insert a new issue into a trial under the cloak of evidence relevant to an already pleaded issue." 425 N.E.2d at 194. A party cannot be held to impliedly consent to the trial of such an issue where it has no notice from any "special evidence" relating only to the unpleaded issue and not relevant to an already pleaded issue. Absent such notice the party is in no position to object to the course of the trial or demand strict adherence to the issues formed by the pretrial order. The trial court was in error when it decided after the close of all evidence to insert a negligence theory of recovery into the instructions to the jury.

■ In *Zimmerman v. Moore* (1982), Ind.App., 441 N.E.2d 690, 693, this court indicated:

"An erroneous instruction will be presumed to have influenced the result in a trial unless it appears that the verdict could not have been different under proper instructions."

An erroneous instruction is grounds for reversal only where the jury's verdict could have been predicated on the instruction. *Zimmerman v. Moore, supra; Hendrickson & Sons Motor Co. v. Osha* (1975), 165 Ind.App. 185, 331 N.E.2d 743, 755. In other words, where the instruction is mere surplusage and could not have affected the jury's decision, we will not reverse. *Zimmerman v. Moore, supra.*

■ In the instant case the jury was presented with two different legal theories upon which the Bank could be found liable for the mishandled repossession: negligence and conversion. Under a conversion theory a necessary element would be that

the Bank actually took possession of the unaccounted for livestock and equipment. *See generally Burras v. Canal Construction and Design Co.* (1984), Ind.App., 470 N.E.2d 1362 (detailing the elements necessary to prove conversion). On the contrary, under the negligence theory the Bank need not have taken possession of the property but rather must have been under a duty to properly handle the repossession regardless of who ended up with the unaccounted for property. We are simply unable to conclude that the jury would have found as it did were it only instructed on a conversion theory. We cannot speculate as to whether the jury reached the verdict it did on the proper instructions on conversion or the improper negligence instructions. *Zimmerman v. Moore, supra.*

As the Bank had no notice that a negligence theory would be put before the jury and as the jury could have found for the Teagues on that theory alone, the case must be reversed and a new trial conducted.

Reversed and remanded.

STATON, P.J., and HOFFMAN, J., concur.