**K MART CORPORATION, Appellant (Defendant Below),**

v.

**Suzanne BRZEZINSKI, Appellee (Plaintiff Below).**

No. 71A03–8808–CV–251.

Court of Appeals of Indiana, Third District.

July 20, 1989.

Jim A. O'Neal, Michael A. Wilkins, Terri Czajka, Ice Miller Donadio & Ryan, Indianapolis, for appellant.

Robert J. Palmer, Jeffery A. Johnson, Wendell W. Walsh, May, Oberfell & Lorber, South Bend, for appellee.

STATON, J.

Kmart Corporation (Kmart) appeals the trial court's judgment entered on a jury verdict in favor of Suzanne Brzezinski, awarding her one million dollars ($1,000,-000.00) as compensatory damages and eight million dollars ($8,000,000.00) as punitive damages on her complaint against Kmart for malicious prosecution and defamation. This appeal raises ten (10) is-

sues.[1]  Because of our disposition, we need discuss only two:

1. Whether the trial court erred in not finding as a matter of law that probable cause existed for Kmart to prosecute Brzezinski.
2. Whether the trial court erred in refusing Kmart's tendered instruction on the issue of qualified privilege.

We reverse.

Brzezinski was employed by Kmart from 1967 until May 16, 1984, when she was terminated.  At that time she was working the 9:00 p.m. to 7:00 a.m. shift as a night filler clerk.  When her shift ended on the morning of May 16, 1984, Brzezinski prepared to leave the store, collecting her belongings in a shopping cart.  Pursuant to Kmart policy, Michael Minter, the store co-manager, stopped Brzezinski as she passed through the front door to inspect the packages she was taking with her.  Brzezinski had with her a box containing a clothes hamper.  When Minter opened the box, the hamper was upside down in the box and articles of clothing were sticking out of the vents in the bottom.

Brzezinski and Minter went to the service desk just inside the front doors and Minter called Bud McGee, the store security manager, who had been in the store all night conducting a security survey. McGee joined Minter and Brzezinski at the service desk where they proceeded to remove the merchandise from the hamper and put it on the service desk.  At about this time, Patrick Kase, an assistant manager, entered the store.  Minter explained to him the situation and told him to go about opening the store for business. McGee recognized some of the articles of clothing as those he, while conducting the night security survey, had seen Brzezinski remove from the clothing rack during her shift.

After removing the merchandise from the hamper, McGee and Minter took Brzezinski, the hamper and the merchandise to McGee's private security office at the back of the store.  Minter contacted Kmart's district manager, Philip Gallivan, and informed him that Brzezinski was found shoplifting.  Minter also contacted Emery Molnar, the security manager of another Kmart store and a liaison between the individual stores and the district loss prevention manager, Ron Wyand.  Gallivan and Molnar then came to the store.

In the security office, McGee and Minter inventoried the merchandise found in the hamper.  Some of the articles did not come from the shelves on the store display floor, but came from a storage room where only employees had access to them.  Close to $400.00 worth of merchandise was recovered from the hamper.

When Gallivan arrived at the store, Minter and McGee told him that Brzezinski had been stopped leaving the store with unpaid-for merchandise.  He reviewed the notes from McGee's night security survey and spoke with Marilyn Maciewjewski, a Kmart employee who had worked with Brzezinski that evening and had returned to the store at Minter's request.  Maciewjewski told him that she and Brzezinski had worked together the entire night, except from about 3 to 4 a.m. when Maciewjewski was in the stockroom, and that she had not seen anything out of the ordinary.

The night security survey is a routine surveillance of night employees to ensure they are performing their duties and are not taking excessive breaks.  The surveys were conducted at scattered intervals, the employees unaware of when they were being conducted.  To conduct the survey, McGee sat in a surveillance room on the second floor of the store where he had a virtually unobstructed peripheral view of the store.  During the surveillance, McGee completed a survey form by recording what each employee was doing at specified times.

During the course of Brzezinski's shift, McGee observed her remove several blouses from the clothing rack near the front of

---

1. Brzezinski raises the issue whether her Motion to Strike Appellant's Pre–Appeal Statement should be granted and the appeal dismissed.

Her motion was denied by order of this court on June 8, 1989.

the store and take them to the service desk where she removed them from the hangers and neatly folded them. Brzezinski then carried the blouses to the furniture area of the store where the hampers were kept. She ducked down out of sight and reappeared without the blouses.

While looking around in the furniture area of the store, Gallivan and Molnar found a pricing ticket on the floor in front of where the hampers were kept. The ticket matched one of the blouses found in the hamper.

Brzezinski denied that she tried to steal the merchandise, but her account was not corroborated by other employees working that evening. When asked if she would submit to a polygraph examination, she agreed to do so, but one was never given. Additionally, a notation in Molnar's investigation report indicates that the hamper carton was taken to the South Bend Police Department for fingerprinting, but there is no evidence whether the carton was in fact fingerprinted.

When Lorraine Taylor, the store's personnel manager, arrived for work that morning she was told about the situation concerning Brzezinski, and she joined the others in the security office. Karen Nash, another employee who worked in advertising and personnel, arrived for work and was told by Kase that Brzezinski was being held in the security office for shoplifting. Nash asked Eva Naugel, another store employee who worked in the office, if it was true and Naugel confirmed that Brzezinski was in the security office. Subsequent to the incident, other store employees inquired about Brzezinski and Minter told them the circumstances surrounding her termination.

After Gallivan, Minter, McGee and Molnar completed their investigation, they informed Wyand, the district loss prevention manager, of the situation and Brzezinski was terminated for theft of merchandise and misappropriation of company funds. Stanley Thompson, the store manager, was on vacation when the incident occurred. When he returned, he was informed of the events leading to Brzezinski's termination.

In addition, the night security survey, McGee's security report, the list of the hamper's contents and the statements of other Kmart employees who were working that night were forwarded to Kmart headquarters in Troy, Michigan.

Kmart's upper management made the decision to prosecute Brzezinski for shoplifting. Consequently, Minter and McGee discussed the situation with the St. Joseph County prosecutor and forwarded to them the Kmart Corporation report of investigation, prepared by McGee, and the list of merchandise found in the hamper, prepared by Minter and McGee. From this material, supplemental affidavits in support of probable cause were prepared for Minter and McGee, which they signed, and the charging information, which Minter signed. The prosecutor determined probable cause existed and submitted the charging information to a judge for a probable cause hearing. Judge Hosinski of the St. Joseph Superior Court determined that probable cause existed and issued a warrant for Brzezinski's arrest. A jury trial in the criminal case against Brzezinski resulted in a finding of not guilty. Brzezinski then instituted the civil action leading to this appeal.

## I.

### *Probable Cause*

Kmart argues that the evidence is insufficient to support the judgment on the malicious prosecution claim because a judicial determination of probable cause was made in the criminal proceeding.

■ To succeed on a claim for malicious prosecution, the plaintiff must prove 1) the defendant instituted, or caused to be instituted, a prosecution against the plaintiff, 2) the defendant acted maliciously in doing so, 3) the prosecution was instituted without probable cause, and 4) the prosecution terminated in the plaintiff's favor. *Johnson County REMC v. Burnell* (1985), Ind.App., 484 N.E.2d 989, 992. Kmart argues that Brzezinski did not carry her burden of proof on the third element, lack of probable cause. It is undisputed that a judicial de-

termination of probable cause was made in the criminal proceedings against Brzezinski.

■ A judicial determination of probable cause in a criminal proceeding constitutes prima facie evidence of probable cause in a subsequent malicious prosecution suit. *Id.* However, the prima facie case may be rebutted by evidence that shows the finding of probable cause was induced by false testimony or fraud, or other improper means such as the defendant withholding material facts at the hearing. *Id.* When a judicial determination of probable cause has been made, the prima facie case cannot be overcome by a showing of a negligent failure to investigate thoroughly where there is some factual basis for bringing a claim. More than mere negligence must be shown to rebut the prima facie case. *Id.* at 993.

■ The prosecutor relied on the affidavits of McGee and Minter and Kmart's report of investigation to draft the charging information. These materials were submitted to the judge at the probable cause hearing and he determined there was probable cause to believe Brzezinski had committed a crime. Brzezinski argues there is evidence that Kmart withheld material information. Specifically, she points to 1) Kmart's night security survey, 2) fingerprinting of the hamper carton, 3) Brzezinski had been employed for almost seventeen years and had never been written up for violating Kmart policy, 4) Brzezinski had found $140.00 on the sales floor and had turned it in, 5) Brzezinski had offered to take a polygraph and was refused, 6) the report of investigation was prepared by McGee from memory, 7) the hamper carton and its contents were not shown to the prosecutor prior to his signing the charging information, 8) Brzezinski had no use for many of the items in the hamper, and 9) Brzezinski knew the hamper carton would be opened before leaving the store.

While some of this information might bear on the ultimate determination of guilt, the only two meriting discussion here are the night security survey and the fingerprinting. A review of the record reveals that the information in the report of investigation, which was submitted to the prosecutor, contained substantially the same information as found in the night security survey. No material facts from the night security survey were left out of the report of investigation. Brzezinski makes much of the fact that no evidence of the fingerprinting results was submitted to the prosecutor or at the probable cause hearing. However, there is no evidence in the record that the hamper carton or the contents were ever fingerprinted. The only evidence regarding fingerprinting is a note in Molnar's report that the hamper carton was sent to South Bend for fingerprinting. There is no evidence that the hamper was in fact fingerprinted or, if it was, what the results were. Brzezinski argues that from the statement that the carton was to be processed for fingerprints, we may draw the inference that the results of the fingerprinting were in her favor since Kmart did not introduce that evidence. However, to reach that conclusion involves making an inference from an inference and this is not allowed. A jury may infer a fact from a fact proved but may not infer a further fact from an inference. There being no evidence that Brzezinski's fingerprints were not on the carton, it cannot be said that Kmart withheld that information. As a matter of law, we conclude that Brzezinski did not meet her burden of proving Kmart withheld material information at the probable cause hearing. Consequently, the record does not support a finding of lack of probable cause and Brzezinski cannot recover on her claim for malicious prosecution. We reverse that portion of the trial court's judgment entered for Brzezinski on her malicious prosecution claim.

## II.

### *Qualified Privilege*

Kmart next argues that the trial court erred in refusing Kmart's tendered instruction on the qualified privilege applicable to the defamation claim. Brzezinski claims Kmart has waived the issue of qualified privilege because it was not pleaded as an affirmative defense and it was not tried by

consent. In her complaint, Brzezinski alleged that Kmart had communicated defamatory remarks both verbally and in writing to other persons and that Kmart had communicated defamatory remarks both verbally and in writing to other persons during the course of the criminal prosecution. In its answer, Kmart denied the publication of any false accusation but did not plead privilege, either absolute or qualified, as a defense to the defamation allegations.

■ Before a party may impliedly consent to the trial of an unpleaded issue, he must be given some notice as to the existence of that issue. *State Exchange Bank v. Teague* (1986), Ind.App., 495 N.E.2d 262, 269. Notice may be overt, as where the unpleaded issue is expressly raised prior to or sometime during the trial but before the close of evidence. Notice may be implied where the evidence presented at trial is such that a reasonably competent attorney would have recognized the unpleaded issue as being litigated. *Id.* at 270. However, the opposing party may not put a new issue into a trial under the cloak of evidence relevant to an already pleaded issue. Both parties must litigate the new issue, and implied consent will not be found unless the parties know or should have known that the unpleaded issue was being presented. *Id.* at 269.

■ The qualified privilege protects a communication made in good faith on any subject matter in which the party making the communications has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty. *Elliott v. Roach* (1980), Ind.App., 409 N.E.2d 661, 672. It has been applied to protect communications made between co-employees about another employee when relevant to the employment. *See Knight v. Baker* (1977), 173 Ind.App. 314, 363 N.E.2d 1048.

■ Kmart argues the issue of qualified privilege was tried by consent because Brzezinski introduced evidence of statements made by Kmart employees to other employees and evidence that those statements were made while the employees were acting within the scope of their employment. Brzezinski counters that the evidence was introduced to support her claim for defamation because she had to prove the employees made the defamatory statements while acting on behalf of Kmart. Thus, Brzezinski correctly asserts that Kmart cannot rely on the evidence to argue Brzezinski was on notice that the issue of qualified privilege was being tried by implied consent.

However, as we noted above, notice that the issue is being tried is overt where the issue is expressly raised prior to the close of the evidence. *Teague, supra* at 270. At the close of Brzezinski's case, Kmart moved for a judgment on the evidence, arguing that the qualified privilege shielded Kmart from liability for the defamatory statements made by Kmart employees to other Kmart employees. Brzezinski did not object to Kmart raising the issue of qualified privilege at that time, nor did Brzezinski object when Kmart tendered a final instruction on qualified privilege. We can only conclude that Brzezinski was put on notice that Kmart was raising the issue and that the issue was tried by consent. *See Terre Haute Regional Hospital, Inc. v. El–Issa* (1984), Ind.App., 470 N.E.2d 1371.

■ We now turn to the issue whether the trial court erred in refusing Kmart's tendered instruction on qualified privilege. In considering whether any error results from refusal of a tendered instruction, we consider 1) whether the tendered instruction correctly states the law, 2) whether there is evidence in the record to support giving the instruction, and 3) whether the substance of the instruction is covered by other instructions which are given. *Picadilly, Inc. v. Colvin* (1988), Ind., 519 N.E. 2d 1217, 1219.

Kmart tendered the following instruction:

You are instructed that statements made in good faith on any subject matter in which the party making the statement has an interest or in reference to which he has a duty either public or priviate [sic], either legal, moral, or social, if

made to a person having a corresponding interest or duty is qualifiedly privileged. The protection of a qualified privilege may be lost if the plaintiff shows that the speaker was primarily motivated by feelings of ill will toward the plaintiff, if the privilege was abused by excessive publication of the defamatory statement, or if the statement was made without belief or grounds for belief in its truth. (R. 256.) This instruction is a correct statement of the law, *Lawson v. Howmet Aluminum Corp.* (1983), Ind.App., 449 N.E.2d 1172, and the instructions given by the trial court did not cover this issue. Thus, we must determine whether the evidence supports giving the instruction.

The evidence introduced by Brzezinski to support her claim for defamation consists of statements made between Kmart management personnel during their investigation of the incident, statements made by management personnel to other Kmart employees and statements made by Kmart employees during the course of the criminal proceedings.[2] Brzezinski asserts that the only communications relevant to this issue are the statements made by Kmart employees Kase and Naugel to co-employee Nash because all the other communications were protected by an absolute privilege.

The trial judge instructed the jury that an absolute privilege protected Kmart from all statements made during the course of the criminal proceedings. The instruction on absolute privilege did not cover the statements made between the Kmart management personnel responsible for investigating the incident and reporting to headquarters, or the statements made by Kmart management to employees inquiring about Brzezinski's dismissal. Brzezinski's assertion does illustrate, however, that there is no real dispute that all of the communications among Kmart employees, other than those made by Kase and Naugel, cannot constitute the basis for her defamation claim because they clearly were protected by the qualified privilege.

Whether a statement is protected by qualified privilege is a question of law unless the facts are in dispute. *Lawson, supra* at 1175. As a matter of law, we conclude that all of the statements made by Kmart employees not during the course of the criminal proceedings were protected by the qualified privilege, except for the statements made by Kase and Naugel to Nash. As to these statements, a question of fact exists as to 1) whether they were made by the employees in the scope of their employment with Kmart such that Kmart is liable for them, and 2) whether, if the statements were made in the scope of their employment, the privilege was abused such that the privilege was lost. The privilege is lost if the defamation goes beyond the group interest, or if publication is made to persons who have no reason to receive the information. *Elliott, supra* at 673. A trier of fact may determine the privilege was abused by use of the occasion for an improper purpose or by lack of belief or grounds for belief in the truth of what is said. *Id.*

A party is entitled to have his theory of the case made by the pleadings, issues and evidence properly presented to the jury in the instructions. *Indianapolis Horse Patrol, Inc. v. Ward* (1966), 247 Ind. 519, 217 N.E.2d 626, 629. The doctrine of qualified privilege was applicable to the allegations contained in the complaint and the evidence presented. It was reversible error for the trial court to refuse to instruct the jury on the doctrine of qualified privilege. *Id.* The judgment of the trial court on the defamation claim is reversed.

We reverse the trial court's judgment in favor of Brzezinski and remand for further proceedings consistent with this opinion.

HOFFMAN and ROBERTSON, JJ., concur.

---

**2.** Kmart also argues that any statement made between Kmart employees cannot be the basis for the defamation claim because there was no publication to a third party since Kmart in effect made the statements to itself. This theory was not raised before the trial court either at trial or in Kmart's motion to correct error. Consequently, Kmart has waived this issue.